UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

DAVID A. STEBBINS                                    APPELLANT

VS.                          CASE NO. 18-2308

STATE OF ARKANSAS, ARKANSAS
REHABILITATION SERVICES, AND AMY JONES         APPELLEES

## APPELLANT BRIEF

Comes now, *pro se* Appellant David Stebbins, who hereby submits the

following Appellant Brief in the above-styled action.

## I.      TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| I. | Table of Authorities | 4 |
| II. | Jurisdictional Statement | 6 |
| III. | Statement of Issues | 7 |
| IV. | Statement of the Case | 10 |
| V. | Summary of Argument | 21 |
| VI. | Argument | 23 |
| | 1.    Failure to give an explanation constitutes an automatic abuse of discretion. | 23 |
| | 2.    The Court erred when it found that the defendants did not break the law when they clearly did. | 25 |
| | 3.    Eastern District abused its discretion | 28 |

RECEIVED

AUG - 9 2018

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

when it denied the motion for appointment
of counsel.

4.     Eastern District committed reversible          30
error when it denied First Motion for
Partial Summary Judgment with
no explanation.

5.     Eastern District abused its discretion when     31
it transferred the case to the Western District.

6.     Timothy Brooks abused his discretion when       31
he did not recuse himself from the proceedings.

7.  Western District abused its discretion by onl      32
partially granting the Motion to Compel Discovery.

8.  Western District abused its discretion by refusing 32
to sanction the Defendants for their frivolous
discovery objection, and giving no explanation
whatsoever for failing to do so.

9.  Western District abused its discretion by denying  33
the Motion for Adverse Inference.

10. Western District committed reversible error        35
when it re-tried the same issues on summary
judgment that had been disposed of on the
Motion to Dismiss.

11. Western District committed reversible error        39
on the Motion for Summary Judgment when
it determined that the Defendants' uncorroborated
word constituted proof beyong material dispute.

12. Western District committed reversible error on     40
the Motion for Summary Judgment when it
determined that my failure to exhaust the
Defendants' personal, arbitrary administrative
remedies was a bar to my claim.

13. Western District abused its discretion by completely ignoring several arguments that were properly before it during the motions for summary judgment.　41

14.　Western District abused its discretion by denying my Motion for Reconsideration without explanation.　43

15.　Western District abused its discretion by denying my Motion for Relief of Judgment without explanation.　42

VII.　Conclusion　44

# II.   TABLE OF AUTHORITIES

| Statutes and Rules | Page |
|---|---|
| Fed.R.Civ.P. 11 | 37 |
| Fed.R.Civ.P. 60(b) | 43 |

| Case Law | Page |
|---|---|
| Cromwell v. County of Sac, 94 US 351, 365 (1877) | 38 |
| Davis v. Scott, 94 F. 3d 444, 447 (8th Cir. 1996) | 29 |
| Delaware v. Van Arsdall, 475 US 673, 680 (1986) | 25 |
| Foman v. Davis, 371 US 178, 182 (1962) | 23 |
| Gulf Oil Co. v. Bernard, 452 US 89, 103 (1981) | 24 |
| Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) | 34 |
| Slaughter v. City of Maplewood, 731 F. 2d 587, 589 (8th Cir. 1984) | 23 |
| Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) | 24 |
| JM v. Francis Howell School District, 850 F. 3d 944, 947 (8th Cir. 2017) | 41 |
| Johnson v. Williams, 788 F. 2d 1319, 1323 (8th Cir. 1986) | 29 |
| Kern v. TXO Production Corp., | 29, 32 |

738 F. 2d 968, 970 (8th Cir. 1984)

Purcell v. Gonzalez,                                    24
549 US 1, 8 (2006)

Sanchez-Llamas v. Oregon,                               34
548 US 331, 356-57 (2006)

Sartin v. Commissioner of Pub.                          34
Saf. of St. of Minn., 535 F. 2d 430,
433 (8th Cir. 1976)

Sayre v. Musicland Group, Inc.,                         34
850 F. 2d 350, 353 (8th Cir. 1988)

Thongvanh v. Thalacker,                                 24
17 F. 3d 256, 260 (8th Cir. 1994)

Tumey v. Ohio, 273 US 510, 535 (1927)                   32

US v. Burrell, 622 F. 3d 961,                           23
964 (8th Cir. 2010)

US v. Walters, 643 F. 3d 1077,                          24
1080 (8th Cir. 2011)

## III. JURISDICTIONAL STATEMENT

### District Court Jurisdiction

The United States District Court for the Eastern District of Arkansas had proper venue and jurisdiction because at least one of the Defendants (the State of Arkansas) was headquartered in the Eastern District. The Federal District Courts, generally, have federal question jurisdiction, since the case involved disability discrimination, ADA Retaliation, and First Amendment Retaliation.

### Appellate Court Jurisdiction

This Court has jurisdiction over the actions of both the Eastern and Western District of Arkansas federal district courts.

### Timeliness

A Motion for Reconsideration was denied on May 11, 2018. A Notice of Appeal was entered in the district court on June 11, 2018. Therefore, this appeal is timely.

### Finality of Judgment

I am unsure if this judgment is in fact final. There were many arguments raised in the District Court that the District Judge proceeded to completely ignore. See Section 12 of the "Argument" of this Brief for details. If this Court wishes to remand to the District Court to dispose of those arguments, I would have no objections.

# IV. STATEMENT OF ISSUES

1.      Does a district court commit an automatic abuse of discretion whenever it issues an order without giving any explanation whatsoever behind its decision?

2.      Does a district court act within its discretion when it denies appointment of counsel solely on the number of lawsuits a pro se plaintiff has filed, without any regards to any other context or factors?

3.      If a district court of competent jurisdiction denies a motion to dismiss for failure to state a claim, does that necessarily constitute an affirmance from that court that, if the Plaintiff shows evidence to prove facts exactly as the Complaint describes them, he would be entitled to relief? More importantly, if the case is later transferred to another judge or trial court, is this new judge bound, under the doctrines of *res judicata* and collateral esoppel, to stave off summary judgment in the Defense's favor if the Plaintiff subsequently shows the evidence that proves the facts exactly as the Plaintiff describes them?

4.      Does the uncorroborated word of an interested party, alone without more, constitute sufficient evidence to warrant summary judgment in that party's favor? If it does not, then do the contents of written documents which the interested party had complete control over elevate the probative value of their evidence to a level that justifies summary judgment?

5.      In a discrimination case, does the mere fact that the Defendants *determined*

the Plaintiff to be ineligible or unqualified automatically exonerate the Defendants of discrimination, regardless of what factors they considered in reaching that conclusion?

6. When granting a motion to compel discovery for files that are electronically stored, does the district court have discretion to arbitrarily restrict discovery only to electronic files that were created using a specific piece of software, no matter how arbitrary or senseless that restriction may be?

7. On a motion for summary judgment, is the trail court required to address all nonfrivolous arguments properly and timely put before it? Put another way: Does a trial court have discretion to completely ignore nonfrivolous arguments that are presented to it in a technically perfect and timely manner?

8. In a discrimination case, when the plaintiff challenges the essentialness of an eligibility requirement, is the Court required to dispose of that challenge on the merits *before* he reaches the question of whether the Plaintiff meets this eligibility requirement?

9. Has Timothy Brookes demonstrated a sufficient pattern of arbitrary rulings in my disfavor to suggest that he might be so annoyed by me that his personal annoyance is becoming a factor in his decisionmaking (even if it may only be a subconscious factor), thus requiring his recusal?

10. In what circumstances is a Court required to give an explanation for his

rulings? Is he exempt from having ot provide an explanation when he reviews a

magistrate judge's recommendation, even when the objections to that

recommendation present nonfrviolous objections? Is he required to give an

explanation when denying a motion for reconsideration or to recuse? Is he required

to give an explanation when denying a motion for appointment of counsel? Is he

required to given an explanation when denying a motion for relief of judgment

pursuant to FRCP 60(b)?

## V.    STATEMENT OF THE CASE

1.    On December 1, 2015, I entered the Harrison, AR division of the Arkansas Rehabilitation Services and applied for benefits for vocational rehabilitation. On December 17, 2015, without even giving me an in-person medical examination, the Defendants denied my application on the grounds that I was "too disabled" for them. They did not even pretend like their actions were motivated by anything other than their arbitrary perception of the severity of my disabilities. By the Defendants' own admission, they based their determination on zero personal knowledge, but instead based it exclusively on their speculation as to what my disabilities *could* prevent me from doing. By the Defendants' own admission, they never once made even the slightest effort to objectively verify if my disabilities prevented me from succeeding in the workforce.

2.    In the recommendation, Leslie Johsnon also stated that, in addition to the speculation as to what my disabilities *could* prevent me from doing, one of the reasons she was recommending that I be denied benefits was because "A search of public records revealed multiple lawsuits filed by Mr. Stebbins against his parents, Wal-Mart, the U of A, and federal judges. Causes of action were mainly civil rights and discrimination."

3.    In July 2013, I filed a lawsuit against the State of Arkansas, as well as the ARS, alleging disability discrimination (because they used my disabilities to justify

denying my application, without making any attempt to collect objective facts abot

what those disabilities entail), ADA retaliation (because the litigation mentioned in

¶2 of this section counted as statutorily protected activities). I also sued Amy Jones

(the manager of the ARS Harrison & Fayetteville Divisions) for First Amendment

Retaliation, since the litigation mentioned in ¶2 of this section was protected by the

First Amendment right to petition. Thoughout the litigation, the Defendants freely

conceded that the litigation mentioned in ¶ 2 of this Section was both statutorily

protected under Sec. 503 of the ADA and was protected under the First

Amendment, so its status as protected on both claims is undisputed in this appeal.

4.      When the Complaint was filed, I also moved for appointment of counsel.

This motion was denied by the magistrate judge. His sole argument for denying

appointed counsel is the fact that I had filed a large *number* of lawsuits in the past,

without any regard to the quality of those lawsuits or their success rate. A timely

objection to this order was filed, but the District Judge overruled the objection

without providing any explanation whatsoever.

5.      The Defendants moved to dismiss the complaint for failure to state a claim.

Their grounds for dismissal was "Only those who are likely to succeed in the

workforce are eligible for assistance from the ARS. And the determination of

whether an individual is likely to succeed in the workforce is solely within the

discretion of the ARS." In other words, the Defendants maintained that they have

the right to discriminate however they see fit, to use whatever factors – even protected classes or statutorily protected activities – to reach their determinations, so long as they check the right boxes when filling out the paperwork, and that the federal courts have no authority to sit in review of their determinations. In other words, the Defendants claimed that they are above the law.

6.      As any sensible person would have done, Magistrate Judge J. Thomas Ray rejected their argument that they are exempt from discrimination law, and found that I had stated a claim upon which relief can be granted, and recommended that the Motion to Dismiss be denied except to the extent the complaint sought damages against Amy Jones. See **Doc. 51**.

7.      While the motion to dismiss was pending, the district court issued a scheduling order. Assuming that this meant I was now able to file a motion for summary judgment, I proceeded to file one, seeking partial summary judgment on the questions of liability but not damages. In support of this motion, I submitted written records from the Defendants that clearly documented their rationale for denying me benefits including Leslie Johnson's recommendation where she flat-out admitted that my litigation and her perception of my disabilities[1] as the main reasons for recommending that I be denied benefits. However, when Magistrate Judge J. Thomas Ray issued his Report and Recommendation, he declared that

---

1  Which, to remind the Court, was not based on personal knowledge, but rather was based solely on her speculation of what my disabilities *could* impede.

some material facts were still "in dispute." But he never made any effort to explain why these facts were in dispute despite noting that I had indeed attached evidence consistent with the allegations in the Complaint.

8. I placed timely and reasonable objections to the Magistrate Judge's Recommendation that my Motion for Partial Summary Judgment be denied without prejudice, including, but not limited to, pointing out that the magistrate judge's failure to give any explanation whatsoever behind his recommended disposition aside from his blanket determinations that the facts were "still in dispute" constituted an automatic abuse of discretion and automatic reversible error. See **Doc. 54**. However, District Judge James Moody proceeded to adopt the Recommendation in its entirety wtihout giving any explanation whatsoever. See **Doc. 55**. I filed a motion for reconsideration or in the alternative to clarify, pointing out the mountain of binding precedent from the 8th Circuit and Supreme Court saying that an explanation from the judge is 100% mandatory, but Judge Moody denied that motion, citing – get this – Tenth Circuit case law, despite any competent jurist knowing that persuasive precedent is always trumped by binding precedent.

9. After denying the motion for reconsideration or in the alternative to clarify, Judge Moody transferred the case to the Western District of Arkansas, despite the fact that the plaintiff's choice of venue should be given substantial deferrence.

10.     In their initial discovery responses, the Defendants raised an entirely new accusation against me that I had not previously been privy to: They accused me of engaging in hostile behavior which they considered to be threatening behavior. They attempted to use that to justify why they did not examine me personally and instead based their determinations solely on speculation.

11.     When the case was transferred to the Western District of Arkansas, the Defendants proceeded to do one of the most baffling things I, personally, have ever seen: They filed a motion for summary judgment where they once again stated "Only those who are likely to succeed in the workforce are eligible for assistance from the ARS. And the determination of whether an individual is likely to succeed in the workforce is solely within the discretion of the ARS" In other words, they re-raised the exact same arguments, verbatim, that had already been disposed of on the Motion to Dismiss!

12.     I moved for the Defendants to be sanctioned for this frivolous argument, on the grounds that this defense of theirs had already been disposed of on the merits and therefore was barred from being re-litigated on the grounds of res judicata and collateral estoppel. In response to this motion, the Defendants argued that, if I can re-raise the same arguments on my Second Motion for Summary Judgment, then there is no good reason why they cannot simply re-raise the same arguments on their motion to dismiss. Bear in mind that my first motion for partial summary

judgment was only denied *without prejudice*, which singlehandedly makes my re-raising of the same issues far less frivolous than their re-raising of the same issues. Judge Timothy Brooks denied the motion, but he raised an entirely new grounds to deny it, despite the fact that I had, multiple times throughout this case, shown an abundance of case law showing that judges are not allowed to bail out parties by raising arguments, claims, or defenses the parties do not raise. He said that a motion to dismiss and a motion for summary judgment are two completely different types of motions (which demonstrates a complete misunderstanding of how res judicata and collateral estoppel both work).

13.    As the case progressed, I served a discovery response onto the Defendants where I asked for electronic files of the various documents they had previously submitted in discovery. My purpose for requesting this was to examine the metadata of those files for evidence that they had been edited since the start of the case in an effort to cake up the accusations against me to make me look less qualified than I actually was (namely, the part about me being hostile to them which they considered to be a threat).

14.    When the Western District Court ruled on this motion to compel discovery, Judge Brooks did something completely baffling: He granted the motion to compel discovery, but for some reason, only required them to submit the electronic versions of files that were prepared using Microsoft Word. There was absolutely no

explanation whatsoever for this arbitrary restriction.

15.    The defendants produced a single document that was made by Microsoft Word: Leslie Johnson's recommendation. However, before submitting it to me, they made sure to delete the metadata from the file so I could not view it. Because of this blatant deleting of the information that I sought discovery on, I moved for an adverse inference pursuant to FRCP 37(e) and the case law of Stevenson v. Union Pacific R. Co. 354 F. 3d 739 (8th Cir. 2003). Timothy Brooks denied this motion on the grounds that they had given me the files on a thumb drive, which was all they were required to do.

16.    This is completely at odds with his original order compelling discovery, where he stated in no uncertain terms that the files were to be provided "so that Mr. Stebbins may search them in the manner described in the articles he attaches to the Motion." See **Doc. 112**. The articles I attached documented how the edit history of a computer file is visible to those who know how to make it appear. In other words, Judge Brooks ordered the Defendants to provide me with the computer files with their edit history metadata intact. Now, he is backpedaling and saying that he never ordered the files to have their metadata be kept intact, when in fact that is exactly what he ordered.

17.    I also filed a few motions for summary judgment. In addition to pointing out how Leslie Johnson's recommendation clearly documents the Defendants' usage of

my statutorily protected activities and real or perceived disabilities, I also raised

several other challenges to the Defendants' actions, including, but not limited to,

the following:

(a)　The Defendants never made any attempt to provide any reasonable

accommdoations to enable me to be qualified.

(b)　The Defendants' eligibility requirements (in particular, the requirement

that I must be "likely to succeed in the workforce") are inherently discrim-

inatory. Thus, unless the Defendants can prove that the eligibility requirements

are all necessary in order to carry out their mission (which the Defendants have

produced precisely zero evidence for), then my ability or inability to meet this

requirement is irrelevant.

(c)　My allegedly hostile behavior, even if it could be proven to be true, does

not rise to the level of "true threat" as outlined in well-established constitutional

case law surrounding the First Amendment. Thus, my allegedly hostile behavior

is a First Amendment protected activity in and of itself, and therefore, for the

Defendants to retaliate in whole or in part against it constitutes a separate act of

First Amendment retaliation completely independent of the use of my litigation

history.

18.　The defendants filed their own Motions for Summary Judgment. As I said

before, their primary defense on the merits to the charge of discrimination is that

they are above the law and are allowed to discriminate. However, as to the claims of ADA retaliation and First Amendment retaliation, they offered literally no evidence whatsoever aside from their self-serving statements that they did not consider my litigation as a factor when determining my eligibility. This directly contradicts Leslie Johnson's recommendation, of course, but the bottom line is that they sought summary judgment based on literally nothing more than the fact that they *claimed* to be innocent.

19.    So shortly after denying the motion for adverse inference (and simultaneously retconning the fact that he had initially ordered the discovery so that the metadata could be inspected), he proceeded to deny my motion for summary and grant the Defendants' motion for summary judgment. In issuing this order, Judge Brooks *completely ignored* the various arguments mentioned in ¶ 18. He did not merely find them to be without merit; he did not find them … period. He completely failed to address them in any capacity, despite the fact that a finding in my favor on *any one of these arguments* would have completely negated the Defendants' arguments and entitled me to relief.

20.    In ruling in the Defendants' favor on the disability discrimination claims, Judge Brooks essentially affirmed that the Defendants have the right to discriminate against me on the basis of my disability, so long as they *determine* that I am unqualified to receive their benefits. It does not matter if they used my

disabilities to reach that conclusion, whether their assessment of my disabilities was medically accurate, whether any reasonable accommodations would have enabled me to meet their eligibility requirements, or even whether their eligibility requirement that I supposedly did not meet (being likely to succeed in the workforce) is even an *essential* eligibility requirement in the first place! As long as they check the right boxes when filling out their paperwork, they are not discriminating against me, regardless of the context of circumstances.

21.    In ruling in the Defendants' favor on the ADA and First Amendment Retaliation claims, Judge Brooks effectively determined that the Defendants' uncorroborated, self-serving statements singlehandedly constitute evidence beyond genuine dispute. The Defendants offered literally no evidence other than affidavits from their own witnesses, and written records that they originally authored and therefore were fully capable of manipulating to say whatever they wanted. The Defendants offered absolutely zero evidence whose probative value was not subject to a credibility determination, and yet Judge Brooks nevertheless found this evidence to be "voluminous."

22.    A Motion for Reconsideration was timely filed in the District Court, but Judge Brooks denied that motion, literally the same day it was filed, in a text-only order. He gave no explanation whatsoever to support his denial, despite knowing that binding precedent in the 8th Circuit stated that this was an automatic abuse of

discretion.

23.    A notice of Appeal was timely filed in the above-styled action, as well as in Case No. 18-3040 (which was also dismissed on the same date). An application for leave to proceed *in forma pauperis* was also filed in both appeals. The Defendants filed a response in opposition to the IFP application in response to Case No. 18-3040. Their sole grounds for arguing that the IFP application should be denied is that I have an extensive litigation history. In other words, they were committing *another* act of ADA retaliation by arguing that I deserved to be stripped of access to the courts!

24.    In light of this recent attempt to sabotage my rights, I filed a Motion for Relief of Judgment under FRCP 60(b)(2), on the grounds of newly discovered evidence that was not reasonably available prior to the entry of judgment. Judge Brooks denied both of those motions in text-only orders, giving no explanation whatsoever, despite knowing that binding precedent in the 8th Circuit stated that this was an automatic abuse of discretion.

25.    This timely appeal ensued.

# VI.  SUMMARY OF ARGUMENT

1.  It is an automatic abuse of discretion to issue an order without giving any explanation whatsoever for the Court's decision.

2.  The Court committed reversible error when it decided that the Defendants did not break the law when they denied my application solely on their speculation as to what my disabilities could impede me from doing.

3.  The Eastern District abused its discretion when it denied the motion for appointment of counsel.

4.  The Eastern District committed reversible error when it denied the First Motion for Partial Summary Judgment with no explanation.

5.  The Eastern District abused its discretion when it transferred the case to the Western District.

6.  Timothy Brooks abused his discretion when he did not recuse himself from the proceedings.

7.  The Western District abused its discretion by only partially granting the Motion to Compel Discovery.

8.  The Western District abused its discretion by refusing to sanction the Defendants for their frivolous discovery objection, and giving no explanation whatsoever for refusing to do so.

9.  The Western District abused its discretion by denying the Motion for

Adverse Inference.

10.     The Western District committed reversible error when it re-tried the same issues on summary judgment that had been disposed of on the Motion to Dismiss.

11.     The Western District committed reversible error on the Motion for Summary Judgment when it determined that the Defendants' evidence constituted proof beyond material dispute, despite the Defendants' evidence being limited exclusively to their uncorroborated word and documents which they had complete control over.

12.     The Western District committed reversible error on the Motion for Summary Judgment when it determined that my failure to exhaust the Defendants' personal, arbitrary administrative remedies was a bar to my claim.

13.     The Western District abused its discretion by completely ignoring several arguments that were properly before it during hte motions for summary judgment.

14.     The Western District abused its discretion by denying my Motion for Reconsideration and Motion for Relief of Judgment, both without any explanation whatsoever.

## VII.  ARGUMENT

### 1.  Failure to give an explanation constitutes an automatic abuse of discretion.

I wish to make this clear at the outset, because it will be mentionednumerous times throughout this section, as the District Courts (both of them) violated this law numerous times throughout the case.

It is well-established, black letter law that, even when a court has discretion as to how to act, a court automatically abuses its discretion when it issues an order with no explanation or so little explanation as to constitute effectively no explanation.

See US v. Burrell, 622 F. 3d 961, 964 (8th Cir. 2010) ("We have held that a district court need not give lengthy explanations … but this does not permit a district court to give no explanation for its decision").

See also Rayes v. Johnson, 969 F. 2d 700, 704-705 (8th Cir. 1992)

"The district court may have had reason to deny Rayes' request for subsequent counsel, but no explanation appears in the record. The request was summarily denied twice."

See also Slaughter v. City of Maplewood, 731 F. 2d 587, 589 (8th Cir. 1984)

"we neverthe-less find it necessary to remand because we cannot determine from the record whether the district court exercised a reasoned and well-informed discretion, so as to permit our review for abuse of discretion."

See also Foman v. Davis, 371 US 178, 182 (1962)  .

"[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

See also Gulf Oil Co. v. Bernard, 452 US 89, 103 (1981)

"We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order."

See also US v. Walters, 643 F. 3d 1077, 1080 (8th Cir. 2011) ("given the lack of specific findings and the evidence in the record, we find that the district court abused its discretion").

See also Jarrett v. ERC Properties, Inc., 211 F. 3d 1078, 1084 (8th Cir. 2000) ("The district court's good faith finding was stated in conclusory fashion with no explanation ... Therefore, the court abused its discretion").

See also Thongvanh v. Thalacker, 17 F. 3d 256, 260 (8th Cir. 1994) ("A careful review of the record reveals no explanation whatsoever for the reduction. Accordingly, the jury award of $4,000 is restored").

See also Purcell v. Gonzalez, 549 US 1, 8 (2006) ("There has been no explanation given by the Court ... we vacate the order of the Court of Appeals").

See also Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 US 501, 513 (1984)

"Thus not only was there a failure to articulate findings with the requisite specificity but there was also a failure to consider

alternatives to closure and to total suppression of the transcript. The trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected."

See also United States v. Grinnell Corp., 384 US 563, 579 (1966)

"The District Court gave no explanation for its refusal to grant this relief. It is so important and customary a provision that the District Court should reconsider it."

See also Delaware v. Van Arsdall, 475 US 673, 680 (1986) ("In so doing, it offered no explanation why the Chapman harmless-error standard ... is inapplicable here.").

Both of the district courts in this case repeatedly violated this procedural law despite me repeatedly reminding them of this law. So I want this Court to keep it in mind while reviewing the rest of this section.

2. **The Court committed reversible error when it determined that the mere possibility that my disabilities *could* interfere with my vocational success was singlehandedly grounds for denial of funds, regardless of whether there was any direct evidence of lack of job performance.**

While I may be making this argument out of order, I feel it is important to address this before I address any other merits because it is the most important and central to this case.

The Defendants denied my application for benefits, not because of any direct observations about my job performance or lack thereof, but because they *believed* that my disabilities *could* negatively impact my job performance. They based their decision entirely on speculation and conjecture.

This is important to address early on, because it goes against literally everything the Americans with Disabilities Act stands for. While being disabled, in old age, or some other protected class, certainly does not give an employee or applicant a free pass for poor job performance, the ADA echoes a Congressional policy that the job performance itself be the basis for your decision, not simply your speculation about what the job performance would be. You should not be allowed to discriminate solely on the speculative basis that disabilities *could* impact job performance. You cannot simply look at a person's job application, notice that he has a disability listed, think to yourself "Well, this disability *could* negatively impact his performance," and then deny the application solely on that speculative ground, without making any *objective* observations of any job performance.

Think about it this way: Imagine if a cop with a vision disability was applying ot be a police officer (such as the plaintiff in the case of Doane v. City of Omaha, 115 F. 3d 624 (8th Cir. 1997)). Suppose that his potential employer, understandably fearful that this applicant might shoot an innocent because he can not see where is he aiming his handgun, has this applicant go through a standard shooting gallery, and the applicant's objective score from this shooting range clearly demonstrated that the applicant indeed could not hit the broad side of a barn. The Defendants' disability would not give him a free pass for being a terrible

shot, which is an essential job qualification for being a cop. However, for the police department to never even give the applicant the *opportunity* to go through that shooting range just on the *assumption* that he would not pass the test – as the defendants did in the case of Doane, supra – is 100% unacceptable disability discrimination.

And yet, by the current Defendants' own admission, that is exactly what they did in this case. This Court should therefore find the Defendants' actions to be just as illegal, and find that the District Court committed reversible error when it found that the Defendants' actions were not illegal.

Even if you genuinely believed, in good faith, that the applicant's disabilities were 100% guaranteed to lead to poor job performance, you would not get off the hook just on that alone. You would need objective, medical *evidence* in order to *prove* that your belief was medically and scientifically accurate, not simply that you genuinely believed it and were sincere in your belief.[2] The Defendants have not even *attempted* to offer evidence for that.

To the contrary, the Defendants' only argument for why their speculation and conjecture was legal was that … the State of Arkansas (not any Act of Congress, but an act of the Arkansas General Assembly) had granted them exemption from

---

2  See PGA Tour, Inc. v. Martin, 532 US 661, 671 (2001) (where the Supreme Court acknowledged that the Defense's witnesses "Their testimony makes it clear that, in their view, [a reasonable modification of the tournament's rules] might well give some players a competitive advantage over other players who [do not enjoy that modification]," but nevertheless finding the Defense's witnesses' mere *beliefs* to carry no weight).

the Americans with Disabilities Act ... as if the State of Arkansas even had the authority to give that kind of permission. Because their state-level policies required that benefits be denied to anyone who, in their sole discretion, is "not likely to succeed in the workforce," they say that their state-level policies trump the federal laws that they broke, despite the fact that this goes against everything we know about the Federal Surpemacy Clause of the US Constitution, as well as common sense.

While I have a dozen other points to argue, this is the *primary* reason why the District Court committed reversible error when it determined that the Defendants had not violated my legal rights. The Defendants' actions were against the letter and the spirit of the Americans with Disabilities Act in nearly every sense, and yet the Court simply said that their motives were not illegal when they absolutely were. This alone, to the exclusion of all other factors, requires reversal of the District Court's decision.

### 3. Eastern District abused its discretion when it denied the motion for appointment of counsel.

At the outset of the case, I moved for appointment of counsel. This motion was denied and the denial was affirmed by a district judge when a timely objection was placed. Both of these orders are abuses of discretion.

The Magistrate Judge articulated one grounds and one grounds only for denying the motion: I had an extensive litigation history. This is an abuse of

discretion because this is not one of the factors that are to be taken into consideration on a motion for appointment of counsel. This court has stated that "appointment of counsel is appropriate ... where there is a question of credibility of witnesses and where the case presents serious allegations of fact which are not facially frivolous." Johnson v. Williams, 788 F. 2d 1319, 1323 (8th Cir. 1986). Other factors to consider include "the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." See Davis v. Scott, 94 F. 3d 444, 447 (8th Cir. 1996).

Because the Magistrate Judge considered none of the relevant factors, he committed an abuse of discretion. See Kern v. TXO Production Corp., 738 F. 2d 968, 970 (8th Cir. 1984).

> "[W]hen we say that a decision is discretionary, or that a district court has discretion to grant or deny a motion, we do not mean that the district court may do whatever pleases it ... An abuse of discretion ... can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

A timely objection to this order was filed. The order was sustained by the district court for absolutely no reason whatsoever. At least, no reason was given on the record. This is an automatic abuse of discretion pursuant to the case law I

provided in Sec. 1 of this Argument.

Both of these are independently grounds for reversal of the District Court's order.

### 4. Eastern District committed reversible error when it denied First Motion for Partial Summary Judgment with no explanation.

When issuing his Recommended Partial Disposition, Magistrate Judge J. Thomas Ray stated that the First Motion for Partial Summary Judgment should be denied without prejudice because facts are still in dispute. However, he made absolutely no effort whatsoever to clarify just what facts he believed were in dispute. No rebuttal evidence was offered. No attempt to clarification. Nothing. They were just … in dispute … for no other reason than because he said so.

The District Judge adopted the Magistrate Judge's recommendation in its entirety, despite having been informed that the recommendation was chronically deficient for failure to include any explanation whatsoever. A motion to clarify was timely filed, but the Easter District Judge denied that motion, citing tenth circuit case law to justify his refusal to provide an explanation.

Tenth circuit case law carries no weight here. That is only persuasive precedent. The mountain of precedent provided in Section 1 of this Argument is *binding* precedent. Binding precedent always trumps persuasive precedent whenever the two conflict.

Therefore, the Eastern District's decision to deny the first Motion for Partial

Summary Judgment should be reversed.

## 5. Eastern District abused its discretion when it transferred the case to the Western District.

At the same time it refused to clarify its denial of the motion for summary judgment (citing clearly inapplicable case law, no less), it also ordered a transfer to the United States District Court for the Western District of Arkansas.

Its only grounds for the transfer was that all the factors were "neutral of in favor of transfer." The District Judge never showed any evidence to show which factors were in favor of transfer (or how he came to that conclusion), and which were neutral.

So the Eastern District Court abused its discretion and its decision should be overturned.

## 6. Timothy Brooks abused his discretion when he did not recuse himself from the proceedings.

Timothy Brooks has admitted outright to holding a grudge against me for my litigation history. See **Case No. 18-3040, Doc. 32**. There, he freely admits to A) being familiar with my litigation history, and B) using this litigation history as a factor in his judgments.

While simply *being* familiar with my litigation history is not, in and of itself, a violation of my rights, using it as a factor in his adverse judgments is.

This automatically necessitates a reversal of the judgment, even if no

prejudice is definitively established. See Tumey v. Ohio, 273 US 510, 535 (1927) ("No matter what the evidence was against him, he had the right to have an impartial judge").

### 7. Western District abused its discretion by only partially granting the Motion to Compel Discovery.

When the Defendants refused to comply with a proper discovery request to produce the computer files for every document that was produced in their initial discovery responses, I filed a motion to compel discovery, and it was granted ... but only insofar as it concerned documents prepared using Microsoft Word.

This came completely out of left field. There was absolutely no reason given on the record for this arbitrary restriction, nor does it make any apparent sense.

A judge commits an abuse of discretion when he acts completely arbitrarily. See Kern v. TXO, supra. This is such an instance.

Because I was not given discovery on the documents that actually accused me of hostile behavior, I was unable to prove that those documents were falsified after the lawsuit was filed. Therefore, I have suffered great prejudice from this arbitrary restriction in my discovery rights.

### 8. Western District abused its discretion by refusing to sanction the Defendants for their frivolous discovery objection, and giving no explanation whatsoever for refusing to do so.

In the same order where he ordered discovery only on files created with a specific application (for some reason), Judge Brooks refused to sanction the

Defendants for their frivolous and time-wasting discovery objections. He provided no explanation whatsoever for his refusal to do so. This is an automatic abuse of discretion for the reasons discussed in Section 1 of this Argument. Therefore, the District Court should be forced to reconsider it.

9. **Western District abused its discretion by denying the Motion for Adverse Inference.**

When the Defendants refused to comply with the Court's order for discovery and deleted the metadata so I could not retrieve any incriminating evidence from it.

I filed a motion for an adverse inference. However, this motion was denied. The grounds upon which the motion was denied, however, are completely perplexing.

First, the judge said that he did not order the Defendants to do anything other than to provide the files on a flash drive. This is a bald-faced lie. Looking back at his original order, it is clear that he ordered the Defendants to produce the files "so that Mr. Stebbins may search them in the manner described in the articles he attaches to the Motion." Now, he is backpedaling and saying that he never agreed to let me search the files for edit history. The judge is not keeping his story straight.

Second, he then states that, even if the metadata was preserved, it would not have shown the exact edits; only when the most recent edit was made. This does not appear anywhere on the record; it is not evidence that was offered by either party. Therefore, for the judge to make this statement shows that he went and

independently investigated the facts of the case, which is a blatant violation of judicial ethics. That is why we have the "adversarial system" of civil litigation.

It is also against binding precedent. Numerous case laws repeatedly affirm that a judge is limited only to considering the arguments and evidence advanced by the parties, and may not raise new claims or defenses *sua sponte*, unless it pertains to the Court's subject-matter jurisdiction. See Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) ("Under [the adversarial system], courts are generally limited to addressing the claims and arguments advanced by the parties. Courts do not usually raise claims or arguments on their own"). See also Sanchez-Llamas v. Oregon, 548 US 331, 356-57 (2006) ("The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim. As a result, rules such as procedural default routinely deny 'legal significance' … to otherwise viable legal claims"). See also Sayre v. Musicland Group, Inc., 850 F. 2d 350, 353 (8th Cir. 1988) (failure to plead affirmative defenses constitutes waiver of that defense, even if not specifically listed in Rule 8(c)). See also Sartin v. Commissioner of Pub. Saf. of St. of Minn., 535 F. 2d 430, 433 (8th Cir. 1976) (same).

But even if it was not wholly unethical for the judge to independently investigate the facts of the case, he still fails to attach any of the actual *evidence* that he supposedly used to reach this determination, or provide any explanation as

to why he considered that evidence to be more probative than the evidence I
provided to him.

But even notwithstanding any of these arguments, it was still an abuse of
discretion for the judge to deny the motion. Therefore, this Court should remand to
the District Court and order it to reconsider the motion.

### 10. Western District committed reversible error when it re-tried the same issues on summary judgment that had been disposed of on the Motion to Dismiss.

In their motion to dismiss, the Defendants argued that they had the right, as a
matter of law, to discriminate against me to their hearts' content. They argued that,
as long as they "made the determination" that I was unqualified, then I was
unqualified, no matter what factors (including disability or statutorily protected
activity) were used to reach that determination. They made no effort to hide how
arbitrary their actions were, instead arguing that, as a matter of law, "the
determination of whether an individual [meets our eligibility criteria] is solely at
the discretion of the ARS." They argued that, as long as they checked the right
boxes when filling out their own paperwork, they are exempt from discrimination
laws, regardless of what protected classes or stautorily protected activities were
used to reach their arbitrary determinations.

The Eastern District Court explicitly struck down that argument, finding the
argument to be without merit as a matter of law, and denied the Defendant's motion

to dismiss. See Doc. 51 & 55.

In denying this motion to dismiss, the Eastern District Judge determined that I had stated a claim upon which relief can be granted. That means that, if the facts in the Complaint were proven to be true, then I would be entitled to relief.

In other words, the Eastern District Judge made the following rulings in our case that day:

- If I can prove that the Defendants referenced my litigation history in the same document or documents that also recommended denying me benefits, a reasonable jury could find that the Defendants acted with at least a small amount of retaliatory motive,

- If I can prove that the Defendants referenced my litigation history in the same document or documents that also recommended denying me benefits, a reasonable jury could find that the Defendants acted with at least a small amount of First Amendment retaliation, and

- If I can prove that the Defendants mentioned my disabilities in the same document or documents that also recommended denying me benefits, a reasonable jury could find that the Defendants acted with at least a small amount of discriminatory motive.

However, after the case was transferred to the Western District, the Defendants filed two more motions for summary judgment, where the Defendants

raised the exact same arguments that had already been put to rest. They did not

even try to hide the fact that they were re-raising the same arguments as before.

They literally just copied and pasted the arguments from their Motion to Dismiss

and used it for their motion for summary judgment.

I moved for sanctions under Fed.R.Civ.P. 11, arguing that their claims were

barred by res judicata and collateral estoppel because they had already been

adjudicated on the motion to dismiss.

Res judicata and collateral estoppel are broad doctrines, applying even in

cases where the exact issues in question may not have been directly and

flamoyantly addressed by the previous court. See Cromwell v. County of Sac, 94

US 351, 365 (1877):

> "Except in special cases, the plea of res judicata applies not only to
> points upon which the court was actually required to form an opinion
> and pronounce judgment, but to every point which properly belonged
> to the subject of the issue, and which the parties, exercising
> reasonable diligence, might have brought forward at the time."

In response to this motion, the only argument the Defendants raised against

the frivolousness of their claims was ... I was re-raising the same arguments in my

Motion for Summary Judgment that had already been rejected previously (see Sec.

3 of this Argument for details), so why can't they re-raise the same issues they

previously got rejected?! That was literally their *only* counter-argument against the

frivolousness of their motion for summary judgment! In saying that in their

defense, they completely ignore the fact my motion for partial summary judgment was denied *without prejudice*, which is an exception to res judicata.

However, Judge Brooks refused to acknowledge that these issues were barred under res judicata, claiming that motions to dismiss are different than motions for summary judgment.

In making this assertion, Judge Brooks clearly does not understand how res judicata and collateral estoppel work. These doctrines bar the re-litigation of issues even if the movant seeks relief under a different theory of liability.

Also, when granting the Defendants' motions for summary judgment and dismissing my claims with prejudice, he stated that the reason his reason for siding with the Defendants was that I have failed to allege an illegal motive. In other words, he was stating that the mere fact that they used my disabilities as a factor in reaching their determination does not cause their actions to be disability discrimination ... a conclusion of law that the Eastern District had already explicitly rejected.

The bottom line is that the Eastern District determined that, if I could prove the facts in my complaint to be true, I would be entitled to relief. The Eastern District also properly concluded that the mere fact that the Defendants "determined" me to be ineligible carries no weight (see Doc. 51, pp. 12-13: "rather than simply deferring to an entity ... and deeming its eligibility rules to be

sacrosanct, a reviewing court must undertake an independent analysis of the importance of an eligibility requirement ... the Court is not bound by Defendant ARS's determination that [the Plaintiff] was not 'qualified' to receive its benefits").

Bear in mind that the Defendants offered no additional *evidence* that I actually, genuinely, objectively failed to meet their eligibility requirements. Their entire defense was based on the sole premise that their *determination* that I did not meet their eligibility requirements is not subject to federal judicial review in the first place. They offered no factual arguments or evidence; they offered only arguments of law. Because they raised no new factual development on the motion for summary judgment than what they raised on their motion to dismiss, their claims should have been barred by res judicata and collateral estoppel.

Therefore, the District Court's order granting the Defendants' Motion for Summary Judgment should be reversed. In addition, I would ask this Court to order the District Court to reconsider its position on the motion for sanctions.

11. **Western District committed reversible error on the Motion for Summary Judgment when it determined that the Defendants' evidence constituted proof beyond material dispute, despite the Defendants' evidence being limited exclusively to their uncorroborated word and documents which they had complete control over.**

In granting the Defendants' motion for summary judgment, the District Court claimed the Defendants' evidence to be "voluminous." He never tells us exactly what the Defendants' evidence was, and that is very telling.

The Defendants' evidence was limited exclusively to their own uncorroborated word, and the contents of their own files. That is it.

When I say they had no evidence besides that, I do not simply mean that their other evidence was so frivolous as to not even deserve mention. I mean there *was no other evidence at all*! There was nothing else to find frivolous or unpersuasive!

This goes against literally everything that summary judgment is about. It is black letter law that a judge must not undertake a credibility determination on a motion for summary judgment. If there is even the slightest probability that a jury could find in the plaintiff's favor, the plaintiff is entitled to a jury trial. It is disputed among the federal appellate circuits whether the uncorroborated, self-serving statements of a non-movant is enough to stave off summary judgment. But what the Defendants have requested and received from the district court is completely unprecedented.

Just on this alone, the District Court's order should be overtuned. The Defendants simply have not shown a nondispute of material fact, and that is simply all there is to it.

**12. The Court committed reversible error on the Motion for Summary Judgment when it determined that my failure to exhaust the Defendants' personal, arbitrary administrative remedies was a bar to my claim.**

The District Court offered an alternative grounds for dismissal of the claim: I

did not exhaust the Defendant's administrative remedies. However, in doing so, he offered no legal citation showing that this was grounds to dismiss the complaint.

There is a reason he offered no legal citation for this: Because none exist. In response to the Defendants' motion for summary judgment, I provided sound case law from the 8th Circuit saying that I have no obligation to exhaust any administrative remedies. See JM v. Francis Howell School District, 850 F. 3d 944, 947 (8th Cir. 2017):

> "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee — what the Act calls a `free appropriate public education.'"

The Court's judgment should be overturned just on that alone.

13. **The Court abused its discretion by completely ignoring several arguments that were properly before it during the motions for summary judgment.**

This is probably the biggest error the Court committed: In my motions for summary judgment, as well my responses to the Defendants' motions for summary judgment, I raised several arguments that should have rendered the Defendants' arguments entirely moot, even if they might have had merit otherwise.

These arguments included, but were not limited to, the following:

- Since the Defendants' eligibility requirements purport on their face to discriminate against disabled individuals, ADA law requires them to make reasonable modifications to those policies unless they can show that doing

so would fundamentally alter the nature of the service. Since the Defendants

have not even attempted to offer any evidence to show that modifying the

eligibility requirements would fundamentally alter the nature of the service,

then my alleged failure to meet them is irrelevant as a matter of law.

- The Defendants did not consider whether any reasonable accommodations

  could enable me to meet their eligibility requirements.

- The behavior the Defendants' complained about – that I was rude to them

  over the phone – does not amount to a "true threat" as a matter of law, and

  therefore is still protected by the First Amendment. Thus, because the

  Defendants now freely admit to retaliating against that speech, that alone

  constitutes First Amendment Retaliation, completely independent of whether

  or not they used my litigation history as a factor in their decision.

When issuing his decision, Judge Brooks proceeded to *completely ignore* all

of these factors and instead pass judgment only on those arguments and claims he

decided he wanted to.

This is a gross abuse of judicial power and should be corrected. The Court

should not be allowed to just pick and choose which arguments it wants to address

that are otherwise properly before it. This case should be remanded for proper

disposition of those arguments and claims.

### 14. Western District abused its discretion by denying my Motion for Reconsideration without explanation.

The Court denied my timely-filed motion for reconsideration in a text-only order, without giving any explanation whatsoever. This is an automatic abuse of discretion for the reasons stated in Section 1 of this Argument and therefore should be overturned.

### 15. Western District abused its discretion by denying my Motion for Relief of Judgment without explanation.

When the Defendants cited my litigation history as a reason why I should not be granted leave to appeal in forma pauperis, I moved for relief of judgment under Fed.R.Civ.P. 60(b) on the grounds that this is additional evidence that the defendants act with a retaliatory motive. The Court denied this timely-filed motion in a text-only order, without giving any explanation whatsoever. This is an automatic abuse of discretion for the reasons stated in Section 1 of this Argument and therefore should be overturned.

## VIII. CONCLUSION

Wherefore, premises considered, I request that the District Court's judgment be overturned.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com